## AKIN *v.* DRUMMOND.

Parol evidence is admissible to prove that an authentic act, attesting the cancelling of a lease and the payment of rent, was executed through error, caused by the fraud of one of the parties. Art. 2256 of the Civil Code, which forbids parol evidence to be received against or beyond what is contained in certain written acts, applies only to contracts relating to real estste. Other acts are subject to the general rules of evidence, which permit mistakes, or fraudulent omissions, to be proved.

A memorandum in writing, signed by a party, and left by him and the other party with a notary for the purpose of preparing an authentic instrument in conformity therewith, is as obligatory between the parties as the authentic act itself, and if any of its covenants are not embodied in the latter, they will not, for that reason, become inoperative. The two instruments are parts of the same contract, and must be construed together.

APPEAL by the plaintiff from a judgment of the District Court of the First District, *Bucchanan*, J., in favor of the defendant.

*Livingston*, for the appellant, on the question of the admission of parol evidence to explain the authentic act, cited Civil Code, art. 2256. *Goodloe* v. *Hart*, 2 La. 449. *Badon* v. *Badon*, 4 La. 166. *Henderson* v. *Stone*, 1 Mart. N. S. 639. *Clark* v. *Farrar*, 3 Mart. 250. 2 Mart. 78. 11 Mart. 630. 12 Mart. 684. 2 Mart. N S. 361. 1 Rob. 358.

*Preston*, on the same side.

*Frazer* and *Roselius*, for the defendant.  Where fraud is charged and error alleged, parol testimony is admissible to contradict even an authentic act.  See *Broussard* v. *Sudrique*, 4 La. 347.  *Keys* v. *Powell*, 9 La. 574.  *Badon* v. *Badon*, 6 La. 255.  *Gale* v. *Kemper's Heirs*, 10 La 209.  *Palangue* v. *Guesnon*, 15 La, 311, and the authorities there cited.  Also 2 Starkie on Evidence, pp. 555, 558.  1 Greenleaf on Evidence, §§ 296, 305.  *Morris* v. *Nixon et al.*, 1 Howard, 119.  2 Story on Equity, § 1531.  A notarial or authentic act has no more force or effect between the parties to it than an act under private signature.  C. C. 2239.

The prohibition contained in arts. 2255, 2256 of the Civil Code, has relation particularly to immovables, and is not applicable to other contracts; they are, governed by the general rules of evidence.  C. C. art. 2257.  *Clamagaran* v. *Sacerdottee*, 8 N. S. 541, 542.  *Bradford et al.* v. *Clark*, 7 La. 147.

The judgment of the court was pronounced by

KING, J.  The plaintiff instituted this suit, claiming originally from Drummond, the defendant, $3,500, which he alleged to be due by the latter for rent; and two unaccepted drafts, given by the defendant on one *Dupuy*, were annexed to the petition as evidences of the debt.  The lessor's privilege was claimed, and the property of the defendant on the premises leased was provisionally seized, to secure the payment of the debt.  The plaintiff subsequently amended his pleadings, increasing his demand to $5,040 73, which he alleged to be the full amount of rent due to the 1st of January, 1845.

The defendant, in his answer, denied that he was indebted to the plaintiff.  He admitted the alleged lease, which commenced on the 28th day of February, 1839, and by its terms was to have expired on the 1st of October, 1849, but avers that, in consequence of a misunderstanding which arose between *Akin* and himself, in relation to the arrears of rent due, the former proposed that, if defendant would pay him $3,500 in cash, he would give the defendant an acquittance for all rents due and to become due until the 1st of January, 1845, and cancel the lease, to take effect on that day, which offer was accepted; that the parties went before a notary, for the purpose of causing the agreement to be embodied in an authentic act; but the notary being unable to prepare the act on that day, at the urgent solicitation of *Akin*, the stipulated sum of $3,500 was then paid, and a receipt given for that sum in full of all rents due and to become due up to the 1st of January, 1845, which was left with the notary, with instructions to prepare the act.  He further alleges that, if the act prepared by the notary, and signed by the parties, be susceptible of any other interpretation than that of a receipt in full for all rents due and to become due up to the 1st day of January, 1845, that he signed it in error, which error was caused by the fraud and deceit of the plaintiff.

It appears from the evidence that, the plaintiff and defendant went before a notary public for the purpose of annulling the lease in question.  The hour being late, the notary stated that the act could not be prepared on that day.  The defendant, nevertheless, paid *Akin* $3,500; and the following memorandum in writing was prepared by *Akin*, signed by him, and left with the notary :

"*Mr. Lewis T. Caire:* Please cancel the lease granted by *David Akin* to *J. Drummond*, and witness the present payment by *Drummond* to *Akin* of $3,500, and embody the same in the act of annulment, as a receipt in full to the first of January next therefor.

(Signed)                 D. AKIN."

An act was prepared by the notary, which was signed by *Drummond* three days after its date, and two days later by *Akin*.  It recites, that *Akin*, " for and in consideration of the sum of $3,500, to him in hand paid, does resiliate,

cancel and annul a certain lease, granted by the said *Akin* to the said *Drum-
mond*, on the 28th day of February, 1839.   But it is well understood and agreed
upon between the parties that said *Drummond* shall have the right of occupying
and using the aforesaid described premises, as heretofore, until the 1st day of
January, 1845.   Now therefore, in consideration of the said sum paid as afore-
said, the said *David Akin* does, by these presents, exonerate the said lessee
from the obligations by him assumed in the aforesaid deed of lease, and does
hereby consent that the same be, from the first of January next, considered
null and void."

No reference is made in the act to rents due, or thereafter to accrue.   The
plaintiff contends that, the sum of $3,500 was paid, in consideration of his an-
nulling an onerous lease, which had several years to run at a heavy annual rent.
The defendant, on the contrary, insists that, by the agreement, the sum paid
was in full of all rents due up to the 1st of January, 1845, and for the annul-
ment of the lease; and, in support of that position, relies on the receipt, or
memorandum, left with the notary.   That memorandum was withdrawn by the
plaintiff a few days after the execution of the public act; a copy of it, how-
ever, was preserved by the notary.   The plaintiff was ordered, on the usual
showing, to produce the original on the trial, but declared his inability do do so,
as it had been lost or destroyed.   The defendant then offered to prove, by parol,
its contents, as well as the agreement and intention of the parties.   This evi-
dence was objected to, on the ground that it was inadmissible to vary or con-
tradict a written instrument.   The objection was overruled, and the plaintiff
excepted.   We think that the court did not err.   The defendant expressly
avers that, if the act be susceptible of any other interpretation than that for
which he contends, it was signed through error, which error was caused by the
fraud of the plaintiff.   Parol evidence to establish these allegations was admis-
sible.

The plaintiff invokes in support of his objection the 2256th article of the
Code, which forbids parol evidence to be admitted against or beyond what is
contained in the written act.   The prohibition of that article has been held to
apply only to contracts in relation to real estate; other acts are subject to the
general rules of evidence, which permit mistakes or fraudulent omissions to
be proved.   No writings are more frequently extended and explained by parol
than receipts.   8 Mart. N. S. 541, and the authorities there cited.   4 Starkie
on Evidence, 1015, 1016, 1018.

The original memorandum, prepared by *Akin* and left with the notary, con-
tained the agreement of the parties, and is as obligatory between them as the
authentic act.   If any of its covenants were not embodied in the authentic act,
the latter was not the depository of the whole intentions of the parties.   The
omitted stipulations did not, for that reason, become inoperative.   The two in-
struments are parts of the same contract, and must be taken and construed to-
gether.   The contents of the memorandum have been proved, and show a
receipt from the plaintiff " in full to the 1st of January."   Those words appear
to us clearly intended to include rents to the 1st January, at which date the
lease was made to terminate.

If any doubt, however, remained, it would be removed by the testimony of the
witnesses, who show the agreement of the parties to have been in strict confor-
mity with the meaning, which we think obviously attaches to the expressions
used in the receipt.

*Lusk*, one of the witnesses, states that when *Akin* returned from the north, in November, 1844, he appeared to be uneasy in consequence of *Drummond's* failure to make certain payments on account of rents, which had been expected from him during the summer. That after some negociations, *in which the witness acted as the intermediary between the parties, it was agreed, that Akin should take $3,500, for the back rent, and annul the lease, allowing the defendant to keep the premises, free of rent up to the first of January;* and that it was, for the purpose of *carrying this agreement into effect,* that the parties appeared before the notary. This witness shows that the parties disagrees in relation to their accounts, the defendant contending that he owed only $3,538 17, while the plaintiff claimed $5000 to be due. After the execution of the act, the witness had several conversations with *Akin,* who seemed to be satisfied with the arrangement. He spoke of *the matter as settled, and said that the deduction he had made was the only means by which he could have saved the sum that he had received.*

*Gothiel*, another witness, states that *Drummond* offered, in December, 1844, to sell to him his foundry establishment, in consequence of which the witness applied to *Akin,* to know whether he had a privilege on the machinery and tools of the defendant, and was answered that he had none. *Akin* offered to lease the premises to this witness, for about half the sum for which they had been rented to *Drummond*, and advised him to purchase *Drummond's* machinery and tools.

These and other witnesses detail circumstances connected with the drafts referred to in the petition, by no means creditable to the good faith of *Drummond*. It is shown that he gave them at a time when he held other accepted drafts for the same debt, and knew that those given to the plaintiff would not be accepted, that he resorted to misrepresentations to prevent those given to the plaintiff from being presented for acceptance, and finally, when about to be detected in the deception he was practicing, that he avowed that other drafts had been accepted, or notes had been given by *Dupuy*, for the debt, which he refused to deliver to the plaintiff's agent, assigning as a reason for withholding them, that he desired to be the plaintiff's debtor, for the purpose of protecting his property from seizure by other creditors.

We think that the testimony of the witnesses shows, that *Akin* desired to be rid of a tenant with whom he could not agree, on whose punctuality he could not rely, and whose bad faith in a recent transaction gave him just reason to apprehend that he would be unable to collect his rents; that these considerations induced him to compromise his difficulties, and accept, *in cash*, a sum somewhat less than that actually due at the time, and to dissolve a lease which, under other circumstances, would have been much more advantageous than any he could then expect to make of the property.

The judge below rejected the plaintiff's demand, and we think that there is no error in the judgment. *Judgment affirmed.*